PAUL PERONA *et al.*, Plaintiffs-Appellants, v. VOLKSWAGEN OF AMERICA, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—2763

Opinion filed August 21, 1997.

---

Robert A. Holstein & Associates, P.C., of Chicago (Robert A. Holstein, Aron D. Robinson, and Robert Lisco, of counsel), for appellants.

Schiff, Hardin & Waite, of Chicago, for appellees.

JUSTICE CERDA delivered the opinion of the court:

On remand from the Illinois Supreme Court.

This appeal arises from a class action of plaintiffs who purchased Audi 5000 automobiles during model years 1983 through 1987. Defendants are Volkswagen of America, Inc., the importer and distributor of Audis in the United States, Audi A.G., the Audi manufacturer, and Volkswagen A.G., the parent corporation of Audi A.G. and Volkswagen of America. The claims arose out of alleged unintended acceleration of the Audi 5000 automobiles.

The trial court dismissed the fifth amended complaint for failure to allege specific defects under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)) and failure to allege proper notice on its Uniform Commercial Code—Sales (UCC) warranty claims (810 ILCS 5/2—313, 2—314 (West 1992)) and Magnuson-Moss Warranty Act (Magnuson-Moss) claims (15 U.S.C. § 2301 *et seq.* (1994)).

On appeal, this court reversed the dismissal of the fifth amended complaint and remanded the matter to the trial court for further proceedings. *Perona v. Volkswagen of America, Inc.*, 276 Ill. App. 3d 609, 658 N.E.2d 1349 (1995). Defendants filed a petition for leave to appeal with the Illinois Supreme Court. During the pendency of the petition for leave to appeal, our supreme court issued an opinion in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584 (1996), then vacated *Perona*, 276 Ill. App. 3d 609, 658 N.E.2d 1349, and remanded it to this court for reconsideration in light of its *Connick* opinion. For the following reasons, we affirm the trial court's dismissal of the UCC and Magnuson-Moss claims and reverse the trial court's dismissal of the Consumer Fraud Act claims.

In March 1987, three groups of plaintiffs filed class action lawsuits. The cases were later consolidated, and a consolidated complaint, filed on October 1, 1987, was brought on behalf of a class of all

persons who purchased or leased 1983 through 1986 model Audi 5000 automobiles.

On May 5, 1988, the parties executed a settlement agreement subject to court approval. The trial court preliminarily approved the settlement agreement on May 19, 1988, and certified the class for purposes of settlement only.

On July 19, 1988, the case was transferred to another trial judge, who, on August 11, 1988, vacated the court order approving the settlement. Subsequently, plaintiffs filed third and fourth amended consolidated class action complaints, which added model years 1978-82 and a subclass, which was comprised of individuals who had allegedly experienced actual incidents of unintended acceleration. Ultimately, the third and fourth amended complaints were dismissed.

On March 4, 1992, a fifth amended complaint was filed by 12 plaintiffs purporting to represent a class of all purchasers and lessees of Audi 5000 automobiles, model years 1983 through 1986, and a subclass of persons whose automobiles allegedly experienced an incident of unintended acceleration. The facts alleged in the complaint are that, during the 1980s, owners of 1983 through 1986 automatic transmission Audi 5000 automobiles experienced incidents where their automobiles accelerated from a stopped position to full throttle at times when the automobile was at a standstill or the driver had his or her foot on the brake pedal. At least 2,000 incidents of unintended acceleration occurred, resulting in at least 513 accidents, 271 injuries, and 5 deaths.

The complaint further alleges that these incidents were caused by defects in the design or manufacture of Audi 5000 automobiles manufactured and sold during the model years 1983 through 1986. The alleged defects include the lever and cable system linking the transmission shift lever, the brake and gas pedal placement and separation, the cruise control system, and the shift lock system.

Audi sent recall letters to its customers in April 1982, September 1983, and January 1987, recalling the Audi 5000 automobiles for repair, advising the owners of the problem, and instructing the drivers on certain vehicle safety procedures. Audi denied any mechanical or design defects. Its position was that driver error was responsible for the incidents of unintended acceleration. In addition, Audi released two press releases regarding the unintended accelerations.

Plaintiffs further allege that defendants' proposed modifications are inadequate because Audi 5000 automobiles that have already been modified have continued to experience instances of sudden and unintended acceleration. As a result of the continuing alleged defects, plaintiffs claim that their Audi 5000s have lost their resale value.

For that reason, plaintiffs are claiming damages in the amount of the full cost of their Audi 5000 automobiles. If the problem is eventually remedied, plaintiffs claim damages in the amount of the diminution of the resale value.

Plaintiffs' first assertion is that their UCC warranty claims should not have been dismissed for failure to give notice. Because defendants were aware of the problem, sent notices and recall letters to its customers, issued press releases, and entered into a proposed national class settlement agreement in relation to claims of unintended acceleration, plaintiffs claim that the March 3, 1987, filing of their lawsuit was appropriate notice of their complaints.

In *Connick*, the defendant automobile manufacturer argued that the plaintiffs could not recover for a breach of warranty under the UCC because the complaint did not adequately allege that they had notified the manufacturer of the breach, as required by article II, section 2—607, of the Uniform Commercial Code (810 ILCS 5/2—607(3)(a) (West 1994)). *Connick*, 174 Ill. 2d at 491-92. The plaintiffs responded that they were excused from giving direct notice of breach of warranty because the manufacturer had actual knowledge of the breach and because notice was given by the filing of the plaintiffs' complaint. *Connick*, 174 Ill. 2d at 492. Those same arguments are made by the parties in this case.

■ Section 2—607(3)(a) of the Uniform Commercial Code provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2—607(3)(a) (West 1992). The purpose of the notice is to allow the defendant an opportunity to gather evidence, investigate facts, and negotiate a possible settlement. *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 350, 378 N.E.2d 1083 (1978). However, direct notice to the seller is not required when (1) the seller has actual knowledge of the defect of the particular product; or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint. *Connick*, 174 Ill. 2d at 492.

■ We first consider plaintiffs' argument that they were excused from giving direct notice of the breach of warranty because Audi had actual knowledge of the Audi 5000's alleged safety risks. In their complaint, plaintiffs alleged that defendants had actual knowledge of the defect and attached several recall notices and two press releases issued by Audi addressing the excessive unintended accelerations.

A federally mandated recall notice does not fulfill the UCC's notice requirement. A manufacturer recall does not admit a defect in a particular product but refers to the possibility of a defect in a class of products. *Bagel v. American Honda Motor Co.*, 132 Ill. App. 3d 82, 88,

477 N.E.2d 54 (1985). Furthermore, the taking of precautions against the future, such as issuance of recall letters, cannot be construed as an admission of responsibility for the past. *Chase v. General Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988). Therefore, anything contained in a recall letter is not sufficient to constitute notice.

The press releases issued by Audi were public announcements of the excessive unintended accelerations and evidence that Audi was aware of the safety concerns of the Audi 5000 automobiles. However, as in *Connick*, Audi's generalized knowledge about the safety concerns was insufficient to fulfill plaintiffs' UCC notice requirement. *Connick*, 174 Ill. 2d at 493. The *Connick* court explained:

> "While it is unnecessary to list specific claims of breach of warranty in giving notice under section 2—607 [citations], it is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.' *** Thus, even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2—607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." (Emphasis in original.) *Connick*, 174 Ill. 2d at 493-94.

Because plaintiffs' complaint does not specifically allege that Audi had actual knowledge of the alleged breach of the particular automobiles purchased by the named plaintiffs in this lawsuit, it does not sufficiently allege notice.

Next, we address plaintiff's assertion that Audi was deemed to be notified of the breach of warranty when plaintiffs' complaint was filed. That argument fails because the commencement of a lawsuit does not satisfy the notice requirement unless the consumer sues for personal injuries. *Connick*, 174 Ill. 2d at 495; *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 462-63, 546 N.E.2d 580 (1989). Since plaintiffs did not allege that they suffered any personal injuries as a result of the Audi 5000's unintended acceleration, the section 2—607 notice requirement was not fulfilled by filing the breach of warranty complaint.

Plaintiffs' failure to allege sufficient notice, either direct notice, actual knowledge, or filing a complaint alleging personal injuries, is fatal to plaintiffs' breach of warranty claims. Therefore, we affirm the circuit court's finding that plaintiffs did not adequately plead notice and hold that the breach of warranty counts in the fifth amended complaint were properly dismissed by the circuit court.

■ We next consider plaintiffs' Magnuson-Moss claims. On remand, plaintiffs contend that Magnuson-Moss does not require notice in the same manner as the UCC. Plaintiffs waived this issue

because this is the first time they have raised it. Arguments not raised in the initial brief are deemed waived for purposes of review. *Axia, Inc. v. I.C. Harbour Construction Co.*, 150 Ill. App. 3d 645, 650, 501 N.E.2d 1339 (1986).

Even if the issue had not been waived, we would reject plaintiffs' argument because Magnuson-Moss incorporates the relevant state law on UCC notice. See *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). For that reason, plaintiffs' failure to allege proper notice of breach under the Illinois UCC also defeats their claims under Magnuson-Moss.

Next, we consider plaintiffs' claims under the Illinois Consumer Fraud Act. Plaintiffs argue that their complaint properly pleaded a cause of action for consumer fraud, which was dismissed by the trial court on the basis that the complaint lacked the specificity required to plead fraudulent conduct under the Consumer Fraud Act.

■ The Consumer Fraud Act prohibits any "concealment, suppression or omission of any material fact, with intent that others rely upon the concealment *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 1992). To state a claim under the Consumer Fraud Act, a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Connick*, 174 Ill. 2d at 501; *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 490, 607 N.E.2d 165 (1992). A plaintiff must at least plead with sufficient particularity and specificity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Connick*, 174 Ill. 2d at 496-97, 501; *Board of Education*, 131 Ill. 2d at 457.

The policy of the Consumer Fraud Act is to give broader protection than common law fraud or negligent misrepresentation. *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1001, 574 N.E.2d 760 (1991). The legislature mandated the courts to use the Act to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers. *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 901, 602 N.E.2d 1374 (1992).

Plaintiffs argue that their complaint adequately pleaded the existence of a specific defect and that defendants knowingly concealed those defects from the public. In their complaint, they alleged in pertinent part:

"26. The Audi 5000 automobiles with automatic transmission manufactured in model years 1983-1986 are defective in design or production in that they suddenly and unintendedly surge, and/or accelerate when the driver shifts into the forward or reverse gear. In addition, or in the alternative, the design of the Audi is such as to cause an increased, unprecedented likelihood of driver error, such increased likelihood causing an unreasonable risk of harm.

27. The Audi 5000 vehicles manufactured and sold in model years 1983 through 1986 contain manufacturing and/or design defects which cause said unintended acceleration.

28. The defects in design or manufacture include the following which independently or in connection with each other cause said 'unintended acceleration' and/or create a likelihood of driver error causing an unreasonable risk of harm:

a) the lever and cable system linking the transmission shift lever;

b) the break [sic] and gas pedal placement and separation;

c) the cruise control system;

d) the shift lock system.

29. These defects in design or manufacture are common to all vehicle models of a given model year.

30. These defects existed in the vehicles at the time all plaintiffs purchased these cars.

31. Said defects were hidden or latent and not discoverable by plaintiffs with reasonable diligence.

\* \* \*

[34.] Despite [Audi's] knowledge of the defect, defendants repeatedly and publicly denied the existence of any defect, failed to inform its owners and purchasers of the Audi 5000 of said defect, and blamed 'driver error' for the mayhem cause by the Audi 5000, without acknowledging the role of its own design problems. Despite their claim that the cars were not defective, in April 1982 and again in September 1983 defendants recalled the cars to make minor changes that defendants claimed would reduce the likelihood of 'driver error.' These recalls failed to correct the defect.

35. On information and belief, defendants, with knowledge of claims of unintended acceleration and with actual knowledge of a latent defect(s) in the Audi 5000, concealed information on said defect from the public knowing such information would effect [sic] the value of the Audi 5000 vehicle.

36. In early 1987, defendants recalled all Audi 5000 series manufactured between 1978 and 1986 explaining that 'Audi considers the number of complaints of Audi 5000 unintended acceleration to be too high' ('Recall campaign GD' letter from Audi of America, Inc. attached hereto as Exhibit 'A') and offering to

install an automatic shift lock designed to prevent the transmission shift lever from being moved from 'park' to 'reverse' or 'drive' unless the brake pedal is applied simultaneously.

\* \* \*

51. The conduct of the defendant described in Count I was unfair or deceptive, or misleading, or an improper concealment, or suppression, or omission of a material fact, in violation of the Consumer Fraud Acts herein above quoted in the following particulars:

(a) Fraudulently and deceptively withheld from the purchasing public the fact that the Audi 5000 S automobile contained dangerous and defective conditions as stated above;

(b) Fraudulently and deceptively refused to make known to the purchasers of said automobile that the same had dangerous and defective conditions that caused sudden acceleration without warning;

(c) Fraudulently and deceptively attempted to mislead the Plaintiffs and the class members herein that there was no defect in the said automobile and the same was primarily and/or exclusively driver's error which caused the accidents with the said automobile;

(d) Fraudulently and deceptively refused to bring to the attention of the class members the defect in the said automobile until ordered and directed to do so by the requirements of the National Traffic and Motor Vehicle Safety Act."

■ In a motion to dismiss (735 ILCS 5/2—615 (West 1992)), all well-pleaded facts are taken as true and all reasonable inferences from those facts are drawn in favor of the plaintiff. *Kolegas v. Heftel Broadcasting Corp.,*154 Ill. 2d 1, 9, 607 N.E.2d 201 (1992); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 499, 568 N.E.2d 870 (1991). A complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that would entitle the plaintiff to relief. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991).

In this case, the complaint alleged at least one specific defect, which was the placement and separation of the brake and gas pedals. The complaint further alleged that defendants knew of the defect, yet fraudulently and deceptively withheld that information from the purchasing public.

■ An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick*, 174 Ill. 2d at 504; 815 ILCS 505/2 (West 1994). A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be

expected to rely in making a decision, whether to purchase the product. *Connick*, 174 Ill. 2d at 505. Our supreme court found in *Connick* that the plaintiffs had adequately pled a consumer fraud violation based on a material omission by Suzuki. *Connick*, 174 Ill. 2d at 505. It stated:

> "Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk. Accordingly, we affirm the appellate court insofar as it reinstated the count alleging that Suzuki committed consumer fraud by concealing material facts about the Samurai's safety risks." *Connick*, 174 Ill. 2d at 505.

■ Similarly, in this case, plaintiffs adequately alleged a consumer fraud violation based on a material omission by Audi. First, plaintiffs alleged that Audi was aware of the Audi 5000's safety problems, including its tendency to accelerate unintentionally. Attached to the complaint were two press releases issued by Audi acknowledging the existence of excessive unintended accelerations of the Audi 5000 automobile. The first press release stated, in pertinent part:

> "1978 through 1983 Audi 5000 vehicles equipped with automatic transmissions will be recalled for installation of a thicker pedal pad which raises the height of the brake pedal. The safety recall affects 117,000 vehicles and is in response to reports that drivers inadvertently have stepped on both gas and brake pedals when they intended to operate the brakes. Analysis indicated that some vehicles have brake pedals that are not high enough, and a driver could step on both pedals at once and possibly lose control of the vehicle."

The second press release stated in part:

> "The Automatic Shift Lock is a unique device designed by Audi to substantially reduce the incidence of unintended acceleration in its automatic transmission Audi 5000 models.
>
> * * *
>
> John B. Damoose, new corporate vice president responsible for Audi of America, said: 'We recognize that the number of incidents of unintended acceleration is too high and we want to reduce it.'
>
> * * *
>
> Unintended acceleration is said to occur when a driver shifts an automatic transmission car from 'park' to 'drive' or 'reverse.' Drivers say the car unexpectedly accelerates and simultaneously cannot be stopped by applying the brakes.

Audi has demonstrated that the brake system in the Audi 5000 will override engine output and is capable of bringing the vehicle even at full throttle to a complete stop. The Automatic Shift Lock keeps the transmission locked in 'park' until the brake is depressed. Therefore, to assure that the driver can have the brakes immediately available, the Automatic Shift Lock keeps the transmission locked in 'park' until the brake is depressed."

Plaintiffs further alleged that Audi failed to disclose these defects. Finally, plaintiffs alleged that the unintended acceleration was a material fact in that they would not have purchased their Audi 5000 automobiles if Audi had previously disclosed the safety risk. Those allegations are sufficient as they apply to Audi 5000s purchased before the two press releases were issued by Audi. Once the press releases were issued, it could not be said that Audi failed to disclose the defects. Moreover, proximate cause could not be shown. Once the press releases were published, a prospective buyer could no longer claim that Audi was concealing the excessive number of unintended acceleration incidents. Hence, there would be no fraudulent concealment conduct by Audi.

Accordingly, we reverse the circuit court insofar as it dismissed the claims of consumer fraud by concealing material facts about the Audi's safety risks. However, valid claims are limited to those automobiles purchased before Audi issued the two press releases.

Based on the foregoing, we find that the claims based on UCC breach of warranty and Magnuson-Moss were properly dismissed. We reverse the dismissal of the Consumer Fraud Act claims, but only insofar as they were based on Audi's concealment of material facts regarding the Audi 5000's safety risk. Further, we limit the Consumer Fraud Act claims to those automobiles purchased before the press releases were issued. We remand this cause to the circuit court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

GREIMAN and GALLAGHER, JJ., concur.