FIFTH DIVISION

                                           November 5, 1999  

No. 1-98-2317

TIM KELLY, on Behalf of Himself and All Others Similarly Situated,

Plaintiff-Appellant,

v.

SEARS ROEBUCK AND COMPANY, 

Defendant-Appellee.

)

)

)

)

) )

)

)

)

Appeal from the

Circuit Court of

Cook County

             

Honorable

Aaron Jaffe,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Tim Kelly, appeals from the circuit court's order dismissing the claims in his amended complaint with prejudice.  Plaintiff brought the instant class action on behalf of himself and other purchasers of Sears Roebuck and Co.'s (Sears) DieHard® automobile batteries.  The circuit court stayed all proceedings on class certification pending the resolution of Sears' motion to dismiss plaintiff's individual action.  Because the circuit court dismissed plaintiff's individual action, no class determinations 
were made, and the present appeal presents issues only as to the individual plaintiff.

In counts I and II of plaintiff's amended complaint, which is the subject of the present appeal, plaintiff alleged that Sears violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq
. (West 1996)) (the Illinois Consumer Fraud Act), and committed common law fraudulent concealment, by selling batteries to customers as if they were new without disclosing its practice of intermingling new and used batteries.

Plaintiff bought two DieHard® batteries in Florida.  Plaintiff claims that he has been injured by Sears' deceptive practice of selling used batteries as if they were new.  Plaintiff sought as damages the difference between the amount paid for the batteries and the true market value that reasonable customers would have been willing to pay had they known the concealed information regarding Sears' practice.

Plaintiff did not allege that the DieHard® batteries he bought were actually used or were defective in any manner, but he alleged that he believed one of the batteries, which had failed, was previously used.  Plaintiff alleged that all Sears batteries carry a risk of poorer performance due to Sears' practice of intermingling used and new batteries.  Plaintiff also argued that Sears' practices deprived its customers of the choice between buying a new battery and a used battery.

Counts III and IV of plaintiff's complaint were claims for intentional and negligent spoliation of evidence, respectively.  Plaintiff argued in the alternative that, if purchasers of the batteries were required to prove that the batteries they bought were indeed used, Sears should be liable for failing to preserve the evidence identifying which of the batteries it sold were new and which were used.  Both parties agree that once a battery is sold and installed in a vehicle, it is impossible to subsequently determine with certainty whether it was new or used at the time of sale.

The circuit court dismissed plaintiff's claims with prejudice for failure to allege injury sufficient to sustain a cause of action.  

For the following reasons, we affirm.

Sears is a New York corporation headquartered in Cook County, Illinois, and is one of the largest general merchandise retailers and operators of automobile repair centers in the United States.

The following factual allegations are taken from plaintiff's amended complaint.

Plaintiff purchased two DieHard® batteries from Sears.  The first battery was purchased on or about September 12, 1995, from Sears' Ocala, Florida, store.  The second battery was purchased on or about November 6, 1995, also from Sears' Ocala, Florida, store.  The two batteries were installed by Sears employees in two different vehicles owned by plaintiff.  

Prior to purchasing the batteries, plaintiff had seen and heard Sears' television advertisements for its DieHard® batteries, and none of the advertisements indicated that Sears sold anything but new batteries.  Plaintiff recalled seeing one of Sears' commercials where a DieHard® battery jump-started a number of other cars in cold weather.  

On September 12, 1995, plaintiff entered the automotive department at Sears' Ocala, Florida, store and approached the counter area.  Plaintiff saw only what appeared to be new tires, car stereos, shocks, and other automobile parts.  Plaintiff saw only floor models of Sears batteries on display, and all of the models he saw appeared to be new.  The batteries were either in new boxes or were shrink-wrapped.  It was plaintiff's experience that when Sears sold used merchandise that merchandise was confined to an "as-is" area of the sales floor, distinctly marked "used," and often not in its original packaging.  Such merchandise also usually had a drastically reduced sales price.  Plaintiff did not receive any indication that used batteries were being offered for sale or that Sears mixed new and used batteries together for retail sale. 

Plaintiff informed a salesperson that he needed a new battery for his van.  The salesperson tested plaintiff's old battery, told plaintiff he needed a new battery, and recommended a new DieHard® battery.  Sears employees then installed a battery in plaintiff's van.  The price plaintiff paid for the battery was $79.48, including tax.  The receipt stated, "All parts new unless otherwise specified."  

Plaintiff's first battery came with a warranty, providing for 72 months of warranty coverage.  If found defective within the first 18 months, the battery would be replaced for no charge.  After that period, up to 72 months from the date of purchase, the refund value of the battery would be pro-rated based on the number of months it was used.  

On or about November 6, 1995, plaintiff again went to Sears' automotive department at the same location and purchased a battery for his car.  Again, a Sears salesperson tested plaintiff's old battery, informed him that he needed a new battery, and recommended a new DieHard® battery.  Plaintiff paid $70.38, including tax, for this second battery, and the battery was installed by a Sears employee.  Plaintiff saw the same display of batteries he had seen when he bought the first battery.  The receipt for plaintiff's second battery also stated, "All parts new unless otherwise specified."

Plaintiff's second battery came with a 60-month warranty.  During the first 12 months a defective battery would be replaced for free.  After that period, up to 60 months from the date of purchase, the refund value of the battery would be prorated based on the number of months it was used.  Both of plaintiff's receipts were attached to his amended complaint as exhibits.  

On November 7, 1997, plaintiff filed his initial complaint against Sears as a class action in the circuit court of Cook County, alleging that all Sears battery purchasers, including himself, were injured by Sears' deceptive practice of selling used, old, or "out-of-warranty" batteries as if they were new batteries because there was a risk that the batteries they purchased would not perform as well as entirely new batteries and because "possibly new batteries are not as valuable as certainly new batteries."

Plaintiff alleged that Sears took various steps to "clean-up" or otherwise blend in used batteries with new batteries so that the new and used DieHard® batteries would be outwardly indistinguishable to unwitting customers.  Plaintiff's initial complaint listed four causes of action, which included a violation of the Illinois Consumer Fraud 
Act, common law fraudulent concealment, negligent spoliation of evidence, and a request for a preliminary and permanent injunction and other equitable relief.

On or about November 26, 1997, the battery plaintiff purchased on September 12, 1995, failed while he was in the Florida Keys.  Plaintiff took his van to a Sears store 60 miles away, where a Sears employee determined that the battery failed a "load test" and recommended a "new" battery.  In the "remarks" section of the "quality service check" form that was filled out upon testing plaintiff's failed battery, a Sears technician wrote "BAD BATTERY."  Sears employees were unable to jump-start plaintiff's van, and so they installed a "new" battery in the parking lot, pursuant to the warranty provisions.  In accordance with the terms of the warranty, plaintiff received a $51.72 refund, which he applied to the purchase of a new DieHard® battery.

On January 28, 1998, Sears filed a motion to dismiss the complaint, arguing that plaintiff lacked standing to assert any claim because he did not allege that his battery was "bad" or that he otherwise suffered an injury.  Furthermore, Sears asserted that plaintiff's theory that all battery purchasers are harmed because Sears may have sold some "bad" batteries did not state a cognizable claim.  Sears also argued that plaintiff's negligent spoliation of evidence claim failed because plaintiff did not allege that Sears had a duty to preserve evidence, and plaintiff's claim that any evidence was destroyed was hypothetical.  Finally, Sears argued that no real controversy existed because plaintiff was made whole by accepting the $51.72 refund, which plaintiff applied to the purchase of a new DieHard® battery.  The court granted Sears' motion and dismissed plaintiff's original complaint without prejudice and ordered plaintiff to file an amended complaint.  

On April 8, 1998, plaintiff filed an amended complaint, dropping the claim for injunctive relief and adding a claim for intentional spoliation of evidence.  The following are factual allegations made in plaintiff's amended complaint regarding Sears' sales of DieHard® batteries.

In 1994, Sears sold more than 8 million DieHard® batteries and garnered more than a 20% share of the automobile battery market.  Sears 
reportedly sells approximately 7.5 million batteries per year, the majority being its DieHard® brand.  Plaintiff alleged that Sears designed and practiced a scheme to market, offer and sell to unsuspecting customers used batteries, old batteries, and "out of warranty" (where Sears' original express warranty has expired) batteries (referred to by plaintiff in the complaint collectively as "bad batteries") as if they were entirely new batteries.  

Plaintiff further alleged that bad batteries provide substantially reduced performance and are of substantially less value than new batteries.  Plaintiff alleged that Sears would routinely clean and repackage bad batteries to appear as new and place them back in inventory for sale, and that Sears employees implicitly and explicitly represented to consumers that the bad batteries were new batteries.  Plaintiff alleged that, "[t]hrough its advertising and packaging of the bad batteries, and through the manner in which the batteries were offered for sale and sold, Sears created the false impression that all of its batteries were new and fresh and failed to disclose that a significant percentage of the batteries were in fact bad batteries."  

The Florida Attorney General's office collected sworn statements from nearly a dozen former Sears employees at Sears stores, primarily in Florida, who described a long-standing practice of selling used batteries as new.  Plaintiff included excerpts from some of these sworn statements to the Florida Attorney General's office in his amended complaint.  The former employees all detailed Sears' practice of selling returned or "tester" batteries as though they were new.  Plaintiff also alleged that, in a letter to the Florida Attorney General's office dated October 14, 1997, Sears admitted it had a practice of using new batteries to test vehicle electrical systems and then returning those tester batteries to the shelf to be sold as new.

Plaintiff also alleged in his amended complaint that Sears and its employees held themselves out to customers as possessing special expertise regarding automobile batteries and applied this sales tactic to induce plaintiff and other class members to purchase batteries that were represented to be new.  Plaintiff alleged that he and the class members justifiably relied on Sears' implicit and explicit representations and believed that the batteries they purchased were new because Sears' other merchandise that is remanufactured, rebuilt or refurbished is expressly identified as such on its packaging or otherwise when it is offered for retail sale.  Plaintiff alleged that Sears' practice was nationwide and systematic.  

Plaintiff alleged that Sears has spent tens of millions of dollars promoting its DieHard® brand batteries in local and national television, radio, newspaper and magazine advertisements, and never disclosed the fact that it blended used and new batteries.  Sears also conducted extensive market research regarding DieHard® brand awareness and the DieHard® image in 1989, 1990, 1991, and 1995, and found that a "reputation for quality," "good warranty," and longevity were what consumers considered to be most important when purchasing new automobile batteries.  The DieHard® brand was most closely associated with being a name-brand battery, lasting a long time, and having a reputation for quality.   Plaintiff alleged that the motive for Sears' fraud was to reduce excess "battery allowances," or lost profits.  Plaintiff alleged that Sears' battery manufacturers, such as Exide, demanded that Sears desist from returning nondefective batteries for credit, and imposed strict limits upon the number and type of batteries that they would accept as returns and for which they would provide return credit.  Thus, when customers demanded refunds or exchanges for new batteries, Sears was forced to absorb the loss.

Plaintiff alleged that he "believes" that his failed battery was "probably a bad battery" at the time of purchase, and that he was injured by Sears' practice of selling used batteries as new when they in fact were not new.  Plaintiff alleged that he purchased each of the batteries in reliance upon Sears' reputation for selling only high-quality, new batteries, and in the belief that Sears sold only new batteries.  Plaintiff further alleged that he would not have purchased DieHard® batteries from Sears at the premium price of new batteries had he known that Sears was selling used batteries along with new batteries, because Sears could not have guaranteed that either of the batteries plaintiff purchased was in fact new.  Before the trial court and on appeal, it is plaintiff's position that every person who purchased a DieHard® battery from Sears since January 1, 1992, suffered damages, whether the battery was new or used at the time of purchase.

In their briefs and arguments on the motion to dismiss, both parties discussed at considerable length the holding in 
Poe v. Sears Roebuck & Co.
, No. Civ.A. 1:96-CV-358-RLV (N.D. Ga. February 17, 1998).  There, a federal court dismissed a class action brought on behalf of all persons who purchased used DieHard® batteries in the belief that they were new during the period from January 1, 1992, through January 30, 1996.  The federal court dismissed the suit because the plaintiffs were unable to show which batteries were new and which were used.  The court also pointed out that the plaintiff's initial class action complaint "is, of course, not certifiable since it consists of everyone who purchased an automobile battery from Sears, not just those persons who purchased a 'used' battery."  
Poe
, slip op. at 2.

On June 24, 1998, the circuit court granted Sears' motion to dismiss plaintiff's amended complaint with prejudice, pursuant to section 2-615 of the Code of Civil Procedure. (735 ILCS 5/2-615 (West 1996)).  The following was the court's reasoning in dismissing the complaint:

"[Kelly] took the battery.  He was in the Florida Keys, a lovely place, and he took it to a Sears store 60 miles away, and the technician told him it was a bad battery, and then they proceeded to install a new battery, and then he had to pay a small amount $28.42 for replacement in accordance with the warranty.  They lived up to their warranty.  We get to the one statement that troubles me more than all others, that is 17(d) says the Plaintiff believes that the failed battery was probably a bad battery at the time of purchase.  That is complete speculation as far as I am concerned, but even more important, I don't see where any injury is really alleged in this complaint.  The injury you talk about *** in great length, about the Florida Attorney General and his investigation, that some Sears' employees admitted certain things, and you say that they had a practice due to an admission by I guess some Sears person that Sears had a practice of using new batteries to test vehicle electrical systems and returning those tester batteries to the shelf to be sold as new.  As I look, you know, through this complaint, you know, I don't even know outside of that what you mean as a used battery ***.

***

In essence what you are saying is everyone who has purchased a Sears battery can bring their suit."  

Plaintiff now appeals from this judgment.

This court reviews a trial court's order dismissing an amended complaint 
de novo
.  
Peter J. Hartmann Co. v. Capital Bank & Trust Co.
, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998).  In reviewing a motion to dismiss under section 2-615, all well-pleaded facts are taken as true and all reasonable inferences from those facts are drawn in favor of the plaintiff.  735 ILCS 5/2-615 (West 1996); 
Perona v. Volkswagen of America, Inc.
, 292 Ill. App. 3d 59, 67, 684 N.E.2d 859 (1997).  This court must determine whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490, 675 N.E.2d 584 (1996).  Dismissal is improper "unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the complainant to recover."  
Hartmann
, 296 Ill. App. 3d at 600.

First, this court will address whether plaintiff has alleged an injury sufficient to support his claims against Sears under the Illinois Consumer Fraud Act
.

The elements of a claim under the Illinois Consumer Fraud Act are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.  
Connick
, 174 Ill. 2d at 501.  Reliance on the part of the plaintiff is not an element of the Illinois Consumer Fraud Act; however, a valid claim must show that the fraud proximately caused an injury to the plaintiff.  
Connick
, 174 Ill. 2d at 501.  "Injury is the legal invasion of a legal right; damage is the loss, hurt or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered."  
Giammanco v. Giammanco
, 253 Ill. App. 3d 750, 758, 625 N.E.2d 990 (1994).  The Illinois Consumer Fraud Act should be liberally construed.  
Connick
, 174 Ill. 2d at 503.  However, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud.  
Connick
, 174 Ill. 2d at 501; 
People ex rel. Hartigan v. E&E Hauling, Inc.
, 153 Ill. 2d 473, 492, 607 N.E.2d 165 (1992).

The present plaintiff contends that a risk that a product may fail or provide unsatisfactory performance is a compensable injury sufficient to state a cause of action under the Illinois Consumer Fraud Act.  Plaintiff alleges that he "believes" that one of his batteries was "probably a bad battery" at the time of purchase.  Plaintiff also alleges that the value of both of the batteries he purchased is diminished due to Sears' sales practices.

Sears argues, on the other hand, that plaintiff's allegation that he "believed" he "probably" received a defective battery does not allege a cognizable injury under the Illinois Consumer Fraud Act.  Sears argues that because plaintiff's complaint did not allege any actual physical injury or defect in either of the batteries purchased by plaintiff, plaintiff cannot show damage.  The trial court agreed with this reasoning in dismissing plaintiff's amended complaint.  We also find that plaintiff has not adequately pled a present injury and/or damages to sustain his claim under the Illinois Consumer Fraud Act.

In his brief, plaintiff relied primarily on three cases to argue that damages were sufficiently alleged in this case:  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 675 N.E.2d 584 (1996), 
Perona v. Volkswagen of America, Inc.
, 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997), and 
Schiffner v. Motorola, Inc.
, 297 Ill. App. 3d 1099, 697 N.E.2d 868 (1998).  We address these cases in turn.

In 
Connick
, the plaintiffs sought compensation for the diminution in resale value of their Suzuki Samurai automobiles due to a perceived safety risk.  The plaintiffs alleged that all Samurais had an excessive risk of rollover due to a defect in their design or production, that all Samurais had inadequate protection for occupants, and that Suzuki failed to disclose these defects to its customers.  
Connick
, 174 Ill. 2d at 505.  "Significantly, plaintiffs did not allege that they had ever suffered a rollover accident in a Samurai.  Rather, they sought compensation for the diminution in the vehicles' resale value due to the perceived safety risk."  
Connick
, 174 Ill. 2d at 489.  The supreme court held that the plaintiff's allegations adequately stated a cause of action under the Illinois Consumer Fraud Act.  
Connick
, 174 Ill. 2d at 503.

In 
Perona
, a complaint was filed on behalf of all owners and lessors of 1983 through 1986 model Audi 5000 automobiles and on behalf of a subclass of persons who had experienced incidents where their automobiles accelerated from a stopped position to full throttle at times when the car was at a standstill or the driver had his or her foot on the brake pedal.  At least 2,000 incidents of unintended acceleration occurred, resulting in at least 513 accidents, 271 injuries, and 5 deaths.  
Perona
, 292 Ill. App. 3d at 62.  The plaintiffs alleged that the incidents were caused by defects in the design or manufacture of all Audi 5000 automobiles for the model years 1983 through 1986.  As a result of those alleged defects, the plaintiffs claimed that their Audi 5000 automobiles had lost their resale value.  
Perona
, 292 Ill. App. 3d at 62.  This court, relying on the holding in 
Connick
, found that the plaintiffs sufficiently pled damages under the Consumer Fraud Act.  
Perona
, 292 Ill. App. 3d at 69.

Connick
 and 
Perona
 are easily distinguishable from the present case on their facts.  In both 
Connick
 and 
Perona
, the plaintiffs claimed that the products they purchased were, in fact, defective.  The plaintiffs in 
Connick
 alleged that every Samurai was at an excessive risk of rolling over due to a design or manufacturing defect that was present in each and every Samurai.  As a result, the resale value of the cars was substantially diminished.  In 
Perona
, the resale value of every plaintiff's Audi 5000 was reduced because of the risk of unintended acceleration caused by a design defect present in each and every Audi 5000 manufactured in the specified model years.  Hundreds of incidents of unintended acceleration actually resulted in either property damage or bodily injury.  Thus, in both 
Connick
 and 
Perona
, the plaintiffs adequately alleged injury and damages.

Finally, in 
Schiffner
, the plaintiffs alleged that the defendant manufactured and sold cellular portable telephones that were defective because of the uncertain safety of the product and defendant's failure to disclose the potential health risks and hazards associated with the use of the product.  Among other things, the plaintiffs also alleged that defendant failed to adequately package or label the phones and provide adequate guards to shield the user from electromagnetic field radiation.  The court affirmed the dismissal of the complaint on other grounds, but also stated that alleging the diminished value of a product due to defects sufficiently stated a compensable injury.  
Schiffner
, 297 Ill. App. 3d at 1108.

Defendant argues that because this court found that the state claims were preempted by federal law, the holding in 
Schiffner
 as to damages is 
obiter dictum
 and is therefore not binding as authority or precedent.  See 
Mid-American Lines, Inc. v. Industrial Comm'n
, 82 Ill. 2d 47, 411 N.E.2d 254 (1980).  We need not rule on whether this holding was judicial 
dictum
 (see 
Cates v. Cates
, 156 Ill. 2d 76, 80, 619 N.E.2d 715 (1993)), as the facts in the instant complaint are inapposite to those in 
Schiffner
.  As in 
Connick
 and 
Perona
, the complaint in 
Schiffner
 alleged that all of the telephones sold by the defendant were defective.

In the instant case, plaintiff alleges that Sears had a practice of selling used batteries as new, but he does not allege that he actually received one of those used batteries.  Unlike the complaints upheld in 
Connick
, 
Perona
, and 
Schiffner
, plaintiff does not allege that all of the DieHard® batteries sold by Sears are bad, only that some of the batteries are bad and that he might have received one of them.

Plaintiffs are required to properly allege a present personal injury and/or damages in each count of their complaint.  
Verb v. Motorola, Inc.
, 284 Ill. App. 3d 460, 471, 672 N.E.2d 1287 (1996).  In 
Verb
, this court affirmed the dismissal of a complaint which alleged that purchasers of cellular telephones had suffered damages, commenting, "[n]or did plaintiffs allege that the telephones are defective; rather, their warranty claims, like their other claims, are based upon the possibility that the telephones 
may
 be defective because of the 'unproven' safety of those telephones."  (Emphasis original.)  
Verb
, 284 Ill. App. 3d at 472.  The court found that each count of the plaintiffs' complaint (including a claim based on consumer fraud), failed to state a cause of action because those claims were all based upon "mere theoretical possibilities of injury and/or damages."  
Verb
, 284 Ill. App. 3d at 473.

Here, plaintiff argues that every automobile battery sold by Sears is defective because "each bore the same risk of poor performance due to previous use."  We reject the proposition that 
all
 of the batteries Sears sold are defective because 
some
 of them may have been used.

Although plaintiff here did allege that the fair market value of a battery known to be new is substantially greater than the fair market value of a battery that runs a substantial risk of being used, plaintiff's allegations are speculative and are insufficient to adequately state a compensable injury.  While the allegations of fraud contained in plaintiff's complaint are markedly more egregious than those found in 
Connick
 and 
Perona
, the circumstances in 
Connick
 and 
Perona
 illustrate easily cognizable actual injuries and damages, while any injury in the present case is speculative at best.

Since plaintiff did not sufficiently allege an injury as required under the Illinois Consumer Fraud Act, the circuit court acted properly in dismissing this count of the complaint.

In light of our decision affirming the trial court's dismissal of plaintiff's claim under the Illinois Consumer Fraud Act based on lack of a compensable injury, we need not address the additional issue raised by defendant that plaintiff could not bring a claim under the Act where the harm did not occur in Illinois.

Next, we turn to plaintiff's common law fraudulent concealment claim.  The elements of common law fraud are: (1) a false statement of material fact by defendant; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.  
Connick
, 143 Ill. 2d at 496.  In order to state a claim for common law fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff.  
Connick
, 174 Ill. 2d at 500.

Looking at the complaint in the light most favorable to the plaintiff, it has been sufficiently shown that Sears regularly engaged in the practice of defrauding its customers by selling used batteries as if they were new, without disclosing this practice to the customers.  However, the present plaintiff has not sustained an injury that would be redressed by a grant of the requested relief.  Plaintiff claims that he would not have bought Sears' DieHard® batteries, or at least would not have paid the price that he did, if he had known that Sears regularly intermingled new and used batteries to sell as though they all were new batteries.

However, 19 days after plaintiff filed his original complaint against Sears, he returned to a Sears store to replace the failed DieHard® battery.  Plaintiff received a $51.72 refund, which he applied to the purchase of a similar DieHard® battery according to the terms of the warranty.  Any injury that plaintiff may have suffered as a result of Sears' fraud was redressed when the warranty provisions were fulfilled and plaintiff's battery was replaced.  Thus, plaintiff received exactly what he bargained for in the transaction.

Plaintiff argues that even if he received the benefit of his bargain, "[where a defendant's] alleged scheme altered the fundamental assumptions underlying the bargaining process, and even though [the plaintiff] may not have been deceived with respect to pecuniary aspects of the ultimate bargain, *** the distortion of the bargaining process is itself sufficient to establish damage."  
Giammanco
, 253 Ill. App. 3d at 763.  Here, plaintiff received the benefit of the bargain when he returned the defective battery to Sears.  This was three weeks 
after
 plaintiff filed his lawsuit.  Therefore, plaintiff cannot plausibly argue that his "fundamental assumptions" were altered by Sears' alleged scheme.

As to the battery that did not fail, the injury alleged by plaintiff in his common law fraud claim is the same as that alleged in plaintiff's statutory consumer fraud claim.  As previously explained, these allegations of injury are speculative and are insufficient to adequately state a compensable injury.  For these reasons, we hold that plaintiff's common law fraudulent concealment claim failed to state a cause of action upon which relief could be granted.

Finally, we turn to the plaintiff's spoliation of evidence claims.  Plaintiff argues on appeal that his claims of intentional and negligent spoliation of evidence were improperly dismissed by the circuit court.  Plaintiff relies on 
Boyd v. Travelers Insurance Co.
, 166 Ill. 2d 188, 652 N.E.2d 267 (1995), in stating that he has a cause of action for both negligent and intentional spoliation and that his claims were sufficiently pled.

Although Illinois courts have never acknowledged a separate tort of negligent spoliation, an action for negligent spoliation can be stated under existing negligence law.  
Boyd
, 166 Ill. 2d at 192-93.  In order to properly state a cause of action for negligence, the plaintiff must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages.  
Boyd
, 166 Ill. 2d at 194-95.

The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute, or other special circumstance.  
Boyd
, 166 Ill. 2d at 195.  A defendant may also voluntarily assume a duty to preserve evidence by affirmative conduct.  
Boyd
, 166 Ill. 2d at 195.  A defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action, and the pleadings must allege facts describing that conduct.  
Jackson v. Michael Reese Hospital & Medical Center
, 294 Ill. App. 3d 1, 11, 689 N.E.2d 205 (1998).

In order to prevail in a negligence action involving the loss or destruction of evidence, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit.  
Boyd
, 166 Ill. 2d at 196.  Put another way, the plaintiff must demonstrate that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit.  
Boyd
, 166 Ill. 2d at 197.

In 
Boyd
, one of the plaintiffs, Boyd, was working in a van belonging to his employer.  Boyd had been using his own propane heater inside the van to keep warm.  The heater exploded and Boyd sustained serious personal injuries.  He filed claims for worker's compensation benefits against his employer and his employer's insurer.

Two employees of the insurer came to the plaintiffs' house and took possession of the plaintiffs' propane heater.  The employees told the Boyd's wife that they needed the heater in order to investigate her husband's worker's compensation claim.  The employees told her that they were going to inspect and test the heater to determine the cause of the explosion.  The insurer's employees took the heater back to their office and stored it in a closet.  The heater was never tested.  When the plaintiffs requested that the heater be returned to them, the insurer was unable to locate it.

The supreme court ruled that the plaintiffs adequately stated a cause of action based on the defendant's negligence.  
Boyd
, 166 Ill. 2d at 198.  The court found that the plaintiffs sufficiently alleged that the insurer's employees had knowledge that the heater was evidence relevant to future litigation, as evidenced by the statements they made regarding testing the heater.  
Boyd
, 166 Ill. 2d at 195.  The court found that the insurer's employees assumed a duty to preserve the heater by taking possession of it when they knew the heater was evidence relevant to future litigation, and they breached that duty by losing the heater.  
Boyd
, 166 Ill. 2d at 195.  The court also found that the plaintiffs sufficiently alleged injury in that they were deprived of the key piece of evidence in their products liability lawsuit against the manufacturer of the heater, with the result that no expert could testify without doubt whether the heater was defective or dangerously designed.  
Boyd
, 166 Ill. 2d at 197.  As to the damages element, the supreme court found that the plaintiffs had alleged sufficient facts supporting the theory that they had suffered an inability to succeed in their otherwise valid products liability action against the manufacturer.  
Boyd
, 166 Ill. 2d at 197.

The facts of the present case, however, are distinguishable from the facts in 
Boyd
.  The record reflects that automobile batteries sold by Sears do not have individual serial numbers and Sears made no notation on the sales receipts given to customers or maintained by the store indicating whether the battery sold was new or used.  Further, all parties agreed that once a battery was installed into a car it was impossible to determine whether the battery was new or used when it was installed.  Plaintiff alleges that Sears owed a duty to warn its customers that all evidence of whether a battery was new or used would be destroyed by the installation and first use of the battery.  Plaintiff claims that Sears breached that duty by not warning the customers and caused injury and damage to the customers by thus destroying the evidence that could have been used against Sears in "an otherwise viable case."

Unlike the plaintiffs in 
Boyd
, the present plaintiff cannot point to a particular piece of evidence that has been destroyed.  Plaintiff is also unable to show that Sears ever had a duty to preserve any evidence or assumed such a duty by their actions.  Sears was under no general duty to preserve evidence.  It is not enough for plaintiff to allege that, simply because Sears was dealing fraudulently on some occasions, it knew that every battery and proof of purchase was a piece of evidence relevant to future litigation, without factual evidence of such knowledge on Sears' part.  Plaintiff has also failed to demonstrate that he had a reasonable probability of prevailing in the underlying suit but for defendant's failure to warn him of the destruction of the potential evidence.  Indeed, the exhibits attached to plaintiff's complaint demonstrated that the great majority of batteries sold by Sears were new.  Therefore, had Sears retained receipts indicating whether the batteries purchased by plaintiff were new, it is much more probable than not that those receipts would show that the batteries were new when purchased.

The key to the plaintiffs' success in 
Boyd
 was that they could point to a specific piece of evidence and illustrate how that evidence would have probably allowed plaintiffs to succeed in their underlying suit.  Here, plaintiff has failed to plead specific facts that establish a duty to preserve the evidence in question.  Therefore, we affirm the ruling of the circuit court dismissing this claim.

Plaintiff also asks this court to recognize intentional spoliation as a new tort in Illinois.  The supreme court in 
Boyd
 did not reach the issue of whether an intentional spoliation tort should be recognized, but it stated that, even if it were to recognize such a tort, the plaintiffs had not sufficiently alleged intent on the part of the defendants in that case.  
Boyd
, 166 Ill. 2d at 201.  In 
Boyd
, the court found that it could not be inferred from the allegations that, although the defendant last possessed the heater and the heater was lost, the defendant intended to destroy it.  
Boyd
, 166 Ill. 2d at 201.

In the present case, the facts are even less convincing.  Plaintiff refers to unspecified documents, materials, and information that Sears is alleged to have possessed, but not preserved.  First, plaintiff has not made a sufficient showing that any such evidence ever existed.  Second, plaintiff claims that Sears "purposefully" failed to preserve this supposed evidence, but he does not allege any facts to support such an intent on the part of Sears.  Following the supreme court's reasoning in 
Boyd
 regarding the intentional spoliation of evidence, we find that even if such a tort existed, the present plaintiff has failed to allege facts sufficient to state such a cause of action.

Based on the foregoing, the judgment of the circuit court granting defendant's motion to dismiss the complaint is affirmed.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.