No. 2--00--0343

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

                          

STEVEN L. OLDENDORF and
 ) Appeal from the Circuit Court

DANA M. OLDENDORF,
 ) of Du Page County.

    )

Plaintiffs-Appellants,
  )                

)

v.  )  No. 99--L--332
            

  ) 

GENERAL MOTORS CORPORATION; DAN )         

WOLF PONTIAC-GMC TRUCKS, INC.; )              

HARRIS BANK BARRINGTON, N.A.;     )                   

and JUDICIAL RECOVERY SYSTEMS,  ) 

INC., a/k/a REI Towing,  ) Honorable

  ) Edward R. Duncan, Jr.,

Defendants-Appellees.  ) Judge, Presiding.

_________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Steven and Dana Oldendorf, appeal the circuit court's order granting the motion of 
defendant Dan Wolf Pontiac-GMC Trucks, Inc. (Wolf), to dismiss counts IV and V of plaintiffs' amended complaint.  Plaintiffs also appeal the court’s order granting motions for summary judgment in favor of defendants Harris Bank Barrington, N.A. (Harris Bank), and Judicial Recovery Systems, Inc. (JRS), as to counts VII and VIII of plaintiffs’ amended complaint.  (Plaintiffs pleaded two count VIIs in their original complaint, which were repeated verbatim in their amended complaint; for purposes of this opinion, we refer to the second count VII as count VIII.)  We affirm the trial court’s judgment granting summary judgment against plaintiffs as to counts VII and VIII of their amended complaint and reverse the court’s judgment dismissing counts IV and V of the amended complaint.  The portion of our opinion regarding counts VII and VIII will not be published.

BACKGROUND

Plaintiffs purchased a used 1995 Pontiac Bonneville from Wolf on December 27, 1997.  Plaintiffs financed the purchase and executed a retail installment agreement, which contained the following provisions: 

"SECURITY INTERESTS: Seller is granted a purchase-money security interest in the motor vehicle described above and all accessories under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. 

*** 

ACCELERATION: Buyer agrees that (1) if Buyer shall

default in the payment of any installment of the Total of Payments or any other indebtedness due hereon *** the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand.

* * * 

5. Upon the occurrence of any event of default, the

holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process."

As required by section 433.2 of the Code of Federal Regulations (FTC Rule) (16 C.F.R. §433.2 (1975)), the agreement also contained the following language: 

"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

The financing agreement subsequently
 was assigned to Harris

Bank, which is identified as "First Lienholder" on the certificate of title.  No other security interest is identified on the certificate of title.  Plaintiffs concede on this appeal that Harris Bank has a perfected security interest in the car under Article 9 of the Uniform Commercial Code (UCC) (810 ILCS 5/9--101 
et seq.
 (West 1998)).   

At the time of purchase, plaintiffs paid $620 for "General Motors Protection Plan Major Guard Coverage" (GMPP contract), which was issued by defendant General Motors Corporation (GM).  Plaintiffs also executed a form entitled "Contract Registration," which was completed at the time the car was purchased.  Our analysis of the content of the registration form will be provided below.

In November 1998, plaintiffs sent notice to Wolf, GM, and Harris Bank of their intent to revoke their acceptance of the car.  Plaintiffs alleged that the car was defective, and unsafe and unreliable as a result, because the car excessively leaked oil in spite of repeated attempts to repair the problem.  They requested the cancellation of the "contracts," the return of all payments made, and compensation for their damages.  The notice was silent as to the nature and the dollar amount of the damages claimed.  Plaintiffs also stated that they would make no further payments under the financing agreement and maintained that repossession was prohibited because they were also "asserting their security interest in the vehicle, pursuant to 810 ILCS 5/2-711, which [gave] them a superior right to possession over any lien holder."

On or about March 19, 1999, JRS, under contract with Harris Bank, repossessed the car.  Plaintiffs filed their initial complaint on March 22, 1999.  On December 29, 1999, plaintiffs filed an amended complaint alleging, in pertinent part,
 violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 
et seq
. (West 1998)), common-law fraud, and conversion.  Counts IV and V alleged violation of the Consumer Fraud Act and common-law fraud, respectively, against GM and Wolf, its authorized dealer.  Counts VII and VIII alleged conversion and violation of the Consumer Fraud Act, respectively, against Harris Bank and JRS.  On Wolf’s motion, the trial court dismissed counts IV and V pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1998)).  On motions brought by Harris Bank and by JRS, the court granted summary judgment against plaintiffs on counts VII and VIII, pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 1998)).  This appeal followed.

ANALYSIS

A section 2-615 motion attacks the legal sufficiency of a complaint by asserting that it fails to state a cause of action upon which relief can be granted.  
Carroll v. Faust
, 311 Ill. App. 3d 679, 684 (2000).  In ruling on such a motion, only those facts apparent from the face of the pleadings, matters of which the court may take judicial notice, and judicial admissions in the record may be considered. 
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 115 (1995).  All well-pleaded facts alleged in the complaint and all reasonable inferences from them are to be taken as true (
Mt. Zion
, 169 Ill. 2d at 115), and the allegations are to be viewed in the light most favorable to the plaintiff (
Carroll
, 311 Ill. App. 3d at 684).  
Our review of the granting of such a motion is 
de novo
. 
Carroll
, 311 Ill. App. 3d at 684.

Count IV alleges violation of the Consumer Fraud Act.  In order to set forth a cause of action under the Act, a complaint must set forth specific facts that establish each of the following elements: (1) a deceptive act of misrepresentation of a material fact by the defendant; (2) the defendant’s intention that the plaintiff rely on the deception of misrepresentation; and (3) that the deception or misrepresentation occurred in the course of business.  
Gragg v. Calandra
, 297 Ill. App. 3d 639, 647 (1998).

Plaintiffs alleged that, "at all times relevant," defendants were engaged in trade or commerce and that the following "representations and/or omissions" were made to plaintiffs:

 "(a) Defendant represented in writing to Plaintiffs that the duration of the GM Protection Plan ('GMPP') purchased by Plaintiffs for $620.00 was 5 years/60,000 miles from the date of purchase. (Exhibit 'B').

10. The representations and/or omissions set forth above were made with the intent that Plaintiffs rely on them.

11. The representations and/or omissions set forth above were false and untrue, or Defendant Dealer committed unfair and/or deceptive acts, in that Defendant; [
sic
]

(a) failed to disclose that coverage under the GMPP had begun to run on 1/12/95, 2 years before Plaintiffs’ purchase;

(b) failed to disclose that coverage under the GMPP would expire in two years, rather than in 5 years, from the date of purchase."

The "Contract Registration" form, which was attached to the

amended complaint as Exhibit "B," identified the car purchased by plaintiffs as a GM certified used vehicle. The form indicated that the car’s odometer mileage was 18,734, the purchase date was December 27, 1997, and the car was originally placed "in service" on January 12, 1995. Limited warranty information was provided next. The form explained that, on vehicles covered under the 48-month/50,000 mile and 60-month/62,000 mile limited warranties, the "time and mileage limits begin on the date the vehicle was first delivered as a new vehicle or put into service and at zero (0) miles." On vehicles covered under the 12-month/12,000 mile warranty, the "time and mileage limits begin on the vehicle purchase date and at the mileage shown above." 

Beneath the limited warranty information was a section explaining optional coverage. The form explained that the following optional coverage was available to plaintiffs at the price of $620.00:

"GM Certified Used Vehicles 
with
 remaining new vehicle limited warranty are eligible for the following plans:

60 Months/60,000 Miles

72 Months/75,000 Miles

72 Months/100,000 Miles." (Emphasis in

original.) 

 The reverse side of the form contained the following language:

"Purchase Provisions - Optional General Motors Protection Plan Major Guard Coverage[:]

Mechanical coverage applies only to parts manufactured or supplied by General Motors.  Coverage does not apply to Non-GM parts, even if they meet manufacturer’s specifications.

Upon acceptance of this Registration, 
mechanical coverage begins on the purchase date of the optional coverage
.  The term of the agreement includes the term of the new vehicle limited warranty.

   A. 
The time and mileage limits of any Plan greater than 36 months or 36,000 miles commence on the same date as the new vehicle limited warranty and at 0 miles, and end at the earlier of the selected time/mileage option
.

The time and mileage term of any Plan less than or equal to 36 months or 36,000 miles will be calculated from the date and mileage on the vehicle on the date of the purchase of this optional coverage.  These plans can be purchased only at the time of vehicle purchase."  (Emphasis added.)

Viewing the allegations of count IV in the light most favorable to plaintiffs, we conclude that plaintiffs did allege sufficient facts to state a cause of action under the Consumer Fraud Act. The contract registration form described the coverage purchased by plaintiffs as "60 Months/60,000 Miles." "[M]echanical coverage" was to begin "on the purchase date of the optional coverage"; however, two sentences later, the document provided that the "time and mileage limits" already commenced "on the same date as the new vehicle warranty and at 0 miles." The form did not clearly or accurately disclose the beginning date of coverage or the actual period of coverage. Furthermore, while the "time and mileage limits" pursuant to the standard limited warranties were listed in the "Limited Warranty" box, the limits under the optional coverage, which plaintiffs purchased, were listed on the back of the page, separate from the options and their costs. While poor drafting and design of a legal document do not constitute fraud
,  deliberate obfuscation of the truth with vague, misleading, and contradictory language and  concealed clauses may be fraudulent.    We further observe that the so-called "60 Months/60,000 Miles" plan could never provide 60 months or 60,000 miles of coverage to plaintiffs.  Each day that the vehicle sat on the lot unsold, the potential length of the coverage decreased; plaintiffs only  received approximately 24 months of coverage under this "60 Month" plan.  Plaintiffs also could never receive more than 41,266 miles of coverage, as the vehicle had already been driven 18,734 miles. While we need not here determine whether plaintiffs will be able to prove to a fact finder that the confusing language and design of the contract rise to the level of fraud, we do conclude that plaintiffs have alleged a cause of action in count IV of their amended complaint. Therefore, the trial court erred in granting the motion to dismiss as to count IV.   

We similarly conclude that plaintiffs alleged sufficient facts in count V to state a cause of action. In order to set forth a cause of action for common-law fraud, a complaint must set forth specific facts that establish each of the following elements: "(1) a statement by defendant; (2) of a material nature as opposed to  opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff’s injury."  
Duran v. Leslie Oldsmobile, Inc.
, 229 Ill. App. 3d 1032, 1039 (1992).

Plaintiffs realleged the allegations of count IV and further alleged:

"14. The misrepresentations and/or failures to disclose as set forth above were made with the intent that Plaintiffs rely on them, and Plaintiffs did, in fact, justifiably rely on them to their detriment.

15. As a result of the misrepresentations and/or failures to disclose set forth above, Plaintiffs have suffered various damages and losses.

16. Defendants’ conduct as set forth above constitutes fraud against Plaintiffs.

17. The misrepresentations and/or failures to disclose set forth above were made wilfully and intentionally or in reckless disregard of the truth or falsity of said misrepresentations or failures to disclose."

Plaintiffs have alleged that the contract registration form, which was  written by defendants, falsely described the warranty coverage that plaintiffs purchased.  This is clearly of a material nature. Plaintiffs also have alleged the requisite 
scienter
 and intent on the part of defendants and reliance and injury on the part of plaintiffs.  Count V clearly states a cause of action sounding in fraud.

Defendants rely on 
Filosa v. Pecora
, 18 Ill. App. 3d 123 (1974), for the proposition that an agreement that is available to both parties cannot form the basis of an action for fraud. In 
Filosa
, the appellate court, citing 
Paine v. Doughty
, 251 Ill. 396 (1911), stated:

"A written contract cannot be set aside on the ground that it is fraudulent where the alleged fraudulent provision appears on the face of the contract so that it was equally open to the knowledge of both parties, or where the party charged with the fraud neither urged its acceptance upon the other nor misled or induced the other to accept and execute it by any statement or misrepresentation as to its meaning or legal effect."  
Filosa
, 18 Ill. App. 3d at 127. 

However, in determining whether an allegedly fraudulent provision is "equally open to the knowledge of  both parties," the drafter of the document must be considered.  See 
Paine
, 251 Ill. at 401.  In 
Paine
, there was no evidence as to which party prepared the contract in issue; this factor, along with the others cited in 
Filosa
, was considered in the court’s determination that a party to the contract in question could not claim that the contract was fraudulent. See 
Paine
, 251 Ill. at 401. The party drafting a document has greater knowledge of the document and also has the opportunity to use the language and form of the document to his advantage.  Here, the contract registration form was a preprinted document copyrighted by GMC.  Plaintiffs obviously had no input into the language or design of the document.  Thus, defendants were in a superior position to plaintiffs regarding knowledge of the contents of the document, and plaintiffs should not be precluded from raising the issue of fraud.

Because we reverse the decision of the trial court granting Wolf’s motion to dismiss for the reasons stated above, we need not address plaintiffs' contention that the disclosures in the registration form are in violation of the Magnuson-Moss Warranty Act (15 U.S.C. §2301 
et seq.
 (1994)) or Federal Trade Commission regulations.

[Nonpublishable material under Supreme Court Rule 23 omitted here.]
 

Accordingly, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded.   

Affirmed in part and reversed in part; cause remanded.

GEIGER and BYRNE, JJ., concur.