SECOND DIVISION
FEBRUARY 21, 2006

No. 1-05-1702

| | | |
|---|---|---|
| SAM PAPPAS and MARY PAPPAS, individually and as parents and next friends of Thanos Pappas, and on behalf of a class of others similarly situated, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| PELLA CORPORATION, an Iowa Corporation; and PELLA WINDOWS & DOORS, a Delaware Corporation, | ) ) ) ) | Honorable Barbara J. Disko, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

Plaintiffs Sam and Mary Pappas bought windows from defendants Pella Corporation and Pella Windows and Doors (Pella).  They claim the windows were defective, causing premature wood rot and deterioration.  They allege Pella knew about the defects but did not inform buyers.  The question is whether the plaintiffs have successfully plead a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act).  815 ILCS 505/1 et seq.  (West 2000).  The trial court dismissed the plaintiffs' complaint.  We reverse and remand.

FACTS

In their Third Amended Complaint, plaintiffs allege Pella knew of and concealed

or failed to disclose to plaintiffs the following facts: (1) the aluminum cladding applied to the bottom sash of the windows was manufactured and designed with an upward facing seam that allowed water to enter the space between the aluminum cladding and wooden sash; (2) the butyl sealant applied to the upward facing seam would prematurely deteriorate and allow water to enter the space; (3) the preservative applied to the wooden sash failed to prevent deterioration and wood rot; and (3) the wooden sashes of the aluminum clad windows were deteriorating and rotting due to water damage.

Plaintiffs allege all of the aluminum clad windows manufactured and sold by Pella, including the windows sold to plaintiffs, had latent, undiscoverable defects at the time of sale. Pella never publicized the defects, or attempted to notify customers of the defects, or recalled the defective windows.

As a direct and proximate result of the defects, say the plaintiffs, the wooden frames of their windows experienced premature wood rot and deterioration. Plaintiffs say they would not have purchased the windows had they known of the defects. They allege Pella's concealment, suppression, or omission of material facts constitutes unfair, deceptive, or fraudulent business practices under the Consumer Fraud Act. They allege the concealment had an effect on consumers generally, implicated the general market, and was immoral, unethical, oppressive, unscrupulous, and otherwise presented consumer protection concerns. Their complaint contains three counts--fraudulent concealment, unjust enrichment, and consumer fraud.

2

Pella brought a motion to dismiss under section 2-615 of the Code of Civil Procedure, 735 ILCS 5/2-615 (West 2002). Pella contended plaintiffs failed to plead an actionable omission because the complaint contained only "opinions and conclusions unsupported by specific factual allegations." Pella contended plaintiffs' complaint was an attempt to circumvent a warranty claim based on their failure to plead a breach of warranty in the complaint.

The trial court dismissed all three counts of plaintiffs' complaint. The Consumer Fraud Act count was dismissed with prejudice. The court found the plaintiffs failed to state how Pella's alleged concealments were "immoral, unethical, oppressive, or unscrupulous." The court held plaintiffs failed to allege how the contract between the parties, specifically the warranty provisions, would not provide adequate relief to the plaintiffs. The trial court's order did not address the class action claims. The plaintiffs' appeal is limited to their individual Consumer Fraud Act claim.

DECISION

A motion under section 2-615 attacks the legal sufficiency of the complaint by asserting that it fails to state a cause of action on which relief can be granted. Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 147, 776 N.E.2d 151 (2002), citing Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A., 186 Ill. 2d 472, 491, 713 N.E.2d 543 (1999). In determining whether a complaint states a cause of action, the allegations in the complaint are construed in the light most favorable to the plaintiff. Oliveira, 201 Ill. 2d at 147. We accept as true all well-pleaded facts and reasonable inferences drawn from

3

those facts.  Our review is de novo.  Oliveira, 201 Ill. 2d at 147.

Section 2 of the Consumer Fraud Act prohibits:

> "[u]nfair methods of competition and unfair or deceptive acts
>
> or practices, including but not limited to the use or
>
> employment of any deception, fraud, false pretense, false
>
> promise, misrepresentation or the concealment, suppression
>
> or omission of any material fact, with intent that others rely
>
> upon the concealment, suppression or omission of such
>
> material fact, *** in the conduct of any trade or commerce"
>
> 815 ILCS 505/2 (West 2002).

Section 10a(a) of the Act provides for a private cause of action for "any person who suffers actual damage as a result of a violation of this Act."  815 ILCS 505/10a(a) (West 2002).

To adequately plead a cause of action under the Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.  Oliveira, 201 Ill. 2d at 149; Zekman v. Direct American Marketers, Inc., 182 Ill. 2d 359, 373, 695 N.E.2d 853 (1998).  A complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud.  Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d

4

482, 501, 675 N.E.2d 584 (1997).

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. Connick, 174 Ill. 2d at 504. Concealment is actionable where it is employed as a device to mislead. First Midwest Bank, N.A. v. Sparks, 289 Ill. App. 3d 252, 257, 682 N.E.2d 373 (1997).

In Connick, the plaintiffs filed a class action lawsuit alleging that the Suzuki Samurai vehicles they purchased were unsafe due to their excessive rollover risk. Connick, 174 Ill. 2d at 487-88. The plaintiffs contended, among other things, that Suzuki fraudulently concealed material facts by failing to inform consumers of the Samurai's rollover tendency and selling the Samurai without disclosing the safety risks. Connick, 174 Ill. 2d at 504.

The court held the plaintiffs adequately pled a consumer fraud violation. Connick, 174 Ill. 2d at 505.

> "Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk." Connick, 174 Ill. 2d at 505.

In a similar case, Perona v. Volkswagen of America, Inc., 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997), the plaintiffs alleged defendants knowingly concealed defects in their Audi vehicles that caused "unintended acceleration." Plaintiffs alleged Audi was aware of the Audi 5000's safety problems but failed to disclose those defects. Plaintiffs further alleged the unintended acceleration was a material fact in that they would not have purchased the Audi 5000 vehicles if Audi previously had disclosed the safety risk. Perona, 292 Ill. App. 3d at 69. The court held the plaintiffs adequately alleged a consumer fraud violation based on a material omission by Audi. Perona, 292 Ill. App. 3d at 68.

Relying on the Illinois Supreme Court's decision in Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 835 N.E.2d 801 (2005), Pella contends the plaintiffs are at most alleging a simple breach of warranty while refusing to pursue their warranty remedies. Merely alleging that a defendant failed to call its product defective, Pella says, does not convert a breach of warranty into consumer fraud.

The plaintiffs' claim in Avery was based on State Farm's specification of non-OEM ("Original Equipment Manufacturer") replacement parts. Avery, 216 Ill. 2d at 110. State Farm contended the plaintiffs' consumer fraud count was simply a duplicate of the breach of contract count and should be dismissed. State Farm pointed to language in the complaint asserting that State Farm installed inferior parts despite having "promised" to use parts of "like kind and quality." Avery, 216 Ill. 2d at 155-56. In their appellate brief, the plaintiffs repeatedly referred to State Farm's violation of the express

written promises in its policies and State Farm's failure to fulfill its contractual obligations. Avery, 216 Ill. 2d at 168-69.

The court held a breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. Avery, 216 Ill. 2d at 169. " 'Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action.' " Avery, 216 Ill. 2d at 169, quoting Zankle v. Queen Anne Landscaping, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988 (2000).

In this case, there is no evidence that the claims in plaintiffs' Third Amended Complaint are based on a simple breach of warranty or breach of contract by Pella. Plaintiffs allege Pella knew its aluminum clad windows would allow water to enter, causing wood rot and deterioration, and failed to disclose these facts to plaintiffs prior to their purchase of the windows. Plaintiffs do not allege Pella breached any promises to them. They say, rather, that Pella knowingly withheld material facts about its windows, that they would not have purchased the windows had they been informed of those facts.

It is not necessary for plaintiffs to plead that the warranty provisions of their contract would not provide them adequate relief. There is no such requirement in the Act. See 815 ILCS 505/2, 505/10a(a) (West 2002). "The Act was intended to protect consumers against fraud, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of trade or commerce." Elson v. State Farm Fire & Casualty

8

Co., 295 Ill. App. 3d 1, 14, 691 N.E.2d 807 (1998). The Act was designed to provide broader protection for consumers than the common law action of fraud. Elson, 295 Ill. App. 3d at 14. A consumer fraud action is different from a warranty action. In some cases, courts have affirmed the dismissal of plaintiffs' breach of warranty claims while allowing Consumer Fraud Act claims to stand. See Connick, 174 Ill. 2d at 505; Perona, 292 Ill. App. 3d at 69.

Pella's references to plaintiffs' prior complaints and their "abandoned" claims and theories, including breach of warranty, are irrelevant. Where a party files an amended pleading that does not refer to or adopt the prior pleadings, the earlier pleadings cease to be a part of the record. Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 153-54, 449 N.E.2d 125 (1983). The prior allegations no longer are at issue.

The plaintiffs in Avery also contended State Farm failed to disclose the categorical inferiority of the non-OEM parts. The plaintiffs contended the failure to disclose constituted "the concealment, suppression or omission of any material fact," in violation of the Consumer Fraud Act. Avery, 216 Ill. 2d at 178, citing 815 ILCS 505/2 (West 1998). The court rejected the plaintiffs' argument:

> "Under plaintiffs' reasoning, it would appear that to avoid
> liability under the Act, every knowing sale of a brand of
> product which is not the top brand would have to carry a
> disclaimer: 'Notice, our brand is not, on the whole, as good

9

as our competitor's.'  Thus, adopting plaintiffs' argument would appear to work a significant expansion of liability under the Act."  Avery, 216 Ill. 2d at 193.

Pella contends the allegations in plaintiffs' complaint are equivalent to a claim that Pella's products are inferior or disappointed plaintiffs' commercial expectations. Pella says Avery means the Consumer Fraud Act does not require it to proclaim the alleged inferiority of its products.

We are not persuaded by Pella's reliance on the Avery decision.  In Avery, the plaintiffs did not claim that any of the non-OEM parts specified by State Farm in its repair estimates was defective.  Avery, 216 Ill. 2d at 170.  The plaintiffs' claim was more general in nature--that non-OEM parts, as a whole, were not as good as OEM parts. Avery, 216 Ill. 2d at 170-71.  The court declined to hold that State Farm's specification of "categorically inferior" nondefective parts, in and of itself, was fraudulent.  Avery, 216 Ill. 2d at 171.  In addition, the court found the plaintiffs had not suffered any actual damage.  Avery, 216 Ill. 2d at 197.  The non-OEM parts used on the vehicle did not affect the value of the vehicle.  Avery, 216 Ill. 2d at 196.

Here, the plaintiffs do not contend Pella should have disclosed its windows were inferior to other windows from other manufacturers.  Rather, the plaintiffs specify a feature of the windows that allowed water to enter the frames and cause damage to the windows.  Further, the plaintiffs allege they suffered actual damage because their windows underwent rotting and deterioration.  Unlike the plaintiffs in Avery, the plaintiffs

10

contend the windows they purchased contained undisclosed defects. We next consider Pella's contention that plaintiffs have not made reference to any legal definition of "defect." Pella contends that under Illinois law, a product is not "defective" unless it is "unreasonably dangerous." See Mele v. Howmedica, Inc., 348 Ill. App. 3d 1, 808 N.E.2d 1026 (2004); Illinois Pattern Jury Instructions for Strict Product Liability, Civil, No. 400.02 (2005 ed.) Pella criticizes plaintiffs for failing to plead according to this standard. Pella appears to argue that where an allegedly defective product is involved, a plaintiff must plead that a product is "unreasonably dangerous" to state a claim under the Consumer Fraud Act. Pella's citations do not support its implicit argument. The Mele decision concerns strict product liability and negligent design claims, both product liability claims. The decision makes no reference to the Consumer Fraud Act. Similarly, the pattern jury instructions cited concern only strict product liability, not the Consumer Fraud Act.

Pella's suggestion that the Consumer Fraud Act incorporates a strict product liability standard is not supported by Illinois law. While a plaintiff bringing a product liability claim must allege that a defect renders a product "unreasonably dangerous," neither "defect" nor "unreasonably dangerous" are elements of a Consumer Fraud Act claim. Rather, for a claim based on an

11

omission, plaintiffs are required to allege an omission of a material fact in the conduct of trade or commerce. See Connick, 174 Ill.2d at 504, citing 815 ILCS 505/2 (West 1994). A material fact exists where a buyer of a product would have acted differently if it had known about the allegedly omitted information, or where that information is the kind a buyer would be expected to rely on in deciding whether to purchase the product. Connick, 174 Ill.2d at 505, 675 N.E.2d 584.

A defect need not be life-threatening. Dewan v. Ford Motor Co., No. 1-04-3020, slip op. at 8 (Ill. App. Ct. December 30, 2005). A defect could fall well short of the "unreasonably dangerous" standard yet still be serious enough that a reasonable buyer would not purchase the product if made aware of the defect.

An omission need not concern potential bodily harm. The Consumer Fraud Act provides remedies for omissions resulting in purely economic injury. See, e.g., Dewan, No. 1-04-3020, slip op. at 3, ("[t]he diminished value of a product due to defects associated with the product is a compensable injury in consumer fraud *** causes of action" where the value of car was allegedly diminished due to defective front height sensors); Bauer v. Giannis, 359 Ill. App. 3d 897, 834 N.E.2d 952 (2005) (seller of home allegedly failed to disclose that basement had flooded once before sale); Lipinski v. Martin J. Kelly Oldsmobile, Inc., 325

12

No. 1-05-1702

Ill. App. 3d 1139, 759 N.E.2d 66 (2001) (seller of car allegedly concealed defect that resulted in the "excessive oil consumption and cause[d] severe damage to the engine from insufficient oil"); Oldendorf v. General Motors Corp., 322 Ill. App. 3d 825, 751 N.E.2d 214 (2001) (car manufacturer allegedly misrepresented extent of coverage under extended warranty); Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership, 307 Ill. App. 3d 614, 717 N.E.2d 429 (1999) (developer of condominiums allegedly failed to maintain adequate reserves for repairs and to disclose the status of the reserve account); Garcia v. Overland Bond & Investment Co., 282 Ill. App. 3d 486, 668 N.E.2d 199 (1996) (car dealership allegedly engaged in deceptive advertising regarding purchasing and financing terms); Washington Courte Condominium Association-Four v. Washington-Golf Corp., 267 Ill. App. 3d 790, 643 N.E.2d 199 (1994) (seller of condominiums allegedly failed to disclose history of water infiltration problems); Grove v. Huffman, 262 Ill. App. 3d 531, 634 N.E.2d 1184 (1994) (home builder liable for misrepresentations that house would be free of water problems where builder constructed garage floor below the level of the roadway).

Pella further contends the plaintiffs' complaint amounts to a claim of non-actionable puffery and "subjective and comparative opinions." " 'Puffing' denotes the

13

exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." Avery, 216 Ill. 2d at 173-74. The claim that Pella should have advertised that its windows are defective, Pella says, is a corollary to Pella stating that its products are high quality. The court in Avery affirmed that mere puffery cannot form the basis of a consumer fraud claim. See Avery, 216 Ill. 2d at 173 (phrases "quality replacement parts" and "high performance criteria" amounted to non-actionable puffing). We disagree with Pella's suggested re-characterization of the complaint in this case. Plaintiffs' claim is not based on any affirmative representations, of any kind, true or false, made by Pella. It is based on the alleged concealment or omission of material facts. We see nothing in the plaintiffs' Third Amended Complaint to suggest puffery is at issue.

Pella contends, and the trial court held, that plaintiffs failed to plead with specificity "how Defendants' statements were 'immoral, unethical, oppressive, or unscrupulous' as to these Plaintiffs." In their complaint, plaintiffs alleged:

"[t]he above-described concealments, suppressions or omissions by Pella have had an effect on consumers generally, implicate the general market, are immoral, unethical, oppressive, unscrupulous, and otherwise present consumer protection concerns. Pella knew of the material defects and continued to manufacture, distribute and sell the windows to the unsuspecting public (consumers) without

disclosure. Furthermore, Pella knew of the defects and

failed to recall or repair the defects."

It is not a requirement in every case under the Consumer Fraud Act for plaintiffs to plead the defendant's actions were "immoral, unethical, oppressive, or unscrupulous." The Act declares unlawful "unfair methods of competition and unfair or deceptive acts or practices." (Emphasis added.) 815 ILCS 505/2 (West 2002).

Because the statute is in the disjunctive, and because the plaintiffs allege deception, not unfairness, we see no need to require plaintiffs to plead the elements of unfairness. The factors to be considered in determining unfairness are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403, 417-18, 775 N.E.2d 951 (2002), citing Federal Trade Comm'n v. Sperry & Hutchinson Co., 405 U.S. 233, 244, n. 5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). As the court said in Robinson: "Recovery may be had for unfair as well as deceptive conduct." Robinson, 201 Ill. 2d at 417. Robinson was treated as an unfairness case.

Pella also contends plaintiffs do not sufficiently plead proximate cause. Pella contends plaintiffs never plead facts in their third amended complaint to establish they were "actually deceived" by Pella's alleged material omissions or misrepresentations regarding the quality of the windows.

Our supreme court has held that "in a cause of action for fraudulent

15

misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation." Avery, 216 Ill. 2d at 199. See also Shannon v. Boise Cascade Corp., 208 Ill. 2d 517, 805 N.E.2d 213 (2004); Oliveira, 201 Ill. 2d 134; Zekman, 182 Ill. 2d 359.

In Shannon, Oliveira, and Zekman, the court held deceptive advertising could not be the proximate cause of damages under the Act unless the advertising actually deceived the plaintiffs. Shannon, 208 Ill. 2d at 525; Oliveira, 201 Ill. 2d at 140-41; Zekman, 182 Ill. 2d at 375-76.

In Oliveira, the plaintiff contended the defendant's advertisements for its premium gasoline were false and misleading and omitted material facts. Relying on Zekman, the supreme court affirmed the dismissal of the plaintiff's claim under the Act because his complaint "failed to allege that the representative plaintiff was in any manner deceived by defendant's advertisements." Oliveira, 201 Ill. 2d at 154-55. Because the plaintiff did not see, hear, or read any of the defendant's ads, he could not contend he believed he was buying gasoline that benefitted the environment or improved engine performance. Oliveira, 201 Ill. 2d at 154-55. See also Zekman, 182 Ill. 2d at 375-76 (affirming summary judgment in favor of the defendant because the plaintiff's deposition testimony established he was not actually deceived by the defendant's advertising).

In Shannon, the plaintiff contended the defendant's composite siding was defective because it was subject to rotting, buckling, warping, wick moisture, and

16

general failure.  The plaintiffs contended the defendant deceptively advertised the composite siding as "low maintenance," "of inherent good quality," and "durable." Shannon, 208 Ill. 2d at 520.  The supreme court affirmed summary judgment in favor of the defendant because the defendant's advertising "did not in any way deceive the plaintiffs."  Shannon, 208 Ill. 2d at 525-26.  The court said:

> "It is certainly possible that evidence might demonstrate that the siding would not have been installed on plaintiffs' homes but for [defendant's] promotional literature.  It does not follow, however, that the literature distributed to unnamed persons 20 or more years ago, who may or may not have been deceived, induced plaintiffs to accept the siding. Without such a nexus, the alleged deception is simply too remote from the claimed damages to satisfy the element of proximate causation."  Shannon, 208 Ill. 2d at 525.

In Avery, the supreme court held the plaintiff had to establish he was actually deceived by the defendant's representations or omissions in order to prove his claim. Avery, 216 Ill. 2d at 200.  The court concluded the notion that the plaintiff was deceived by omissions or representations in his repair estimate and brochure into accepting inferior automotive parts was categorically refuted by the record.  Avery, 216 Ill. 2d at 200.  The plaintiff's deposition testimony made it abundantly clear that he was not actually deceived by anything the defendant said or did not say.  Avery, 216 Ill. 2d at

17

202. The court, relying on <u>Oliveira</u>, concluded plaintiff had failed to establish proximate causation. <u>Avery</u>, 216 Ill. 2d at 203.

Unlike the plaintiffs in <u>Avery</u>, <u>Shannon</u>, <u>Oliveira</u>, and <u>Zekman</u>, plaintiffs here are not relying on allegedly deceptive advertising in order to establish their consumer fraud claim against Pella. Instead, plaintiffs allege that Pella, even though aware of a material defect, never notified its customers that the aluminum clad wood windows were defective. In effect, plaintiffs allege they relied on Pella's concealment by silence. Requiring anything more would eviscerate the spirit and purpose of the Consumer Fraud Act.

We find plaintiffs adequately plead proximate causation in their third amended complaint for consumer fraud. See <u>Connick</u>, 174 Ill. 2d at 504 ("the required allegation of proximate cause is minimal since that determination is best left to the trier of fact"); <u>Perona</u>, 292 Ill. App. 3d at 68-69.

CONCLUSION

We reverse the trial court's decision dismissing plaintiffs' Third Amended Complaint and remand this cause for further proceedings.

Reversed and remanded.

GARCIA, P.J., and HALL, J., concur.