SECOND DIVISION
September 26, 2006

No. 1-04-2945

WILLIAM L. WHITE and SAMUEL J. RIOLO,  )    Appeal from the
individually and on behalf of all        )    Circuit Court of
others similarly situated,               )    Cook County.
                                         )
     Plaintiffs-Appellants,              )
                                         )
            v.                           )
                                         )
DAIMLERCHRYSLER CORPORATION, a Delaware )
corporation,                             )    Honorable
                                         )    Julia M. Nowicki,
     Defendant-Appellee.                 )    Judge Presiding.


     PRESIDING JUSTICE WOLFSON delivered the opinion of the

court:

     Plaintiff William L. White filed suit under the Illinois Consumer Fraud Act ("the

Act"), 815 ILCS 505/1 et seq. (West 2000), contending defendant DaimlerChrysler

Corporation knowingly concealed a material defect in his Jeep vehicle and in the

vehicles of similarly situated class members.[1]  He alleged exhaust manifolds installed in

the vehicles failed at "unacceptably high rates."

     Defendant filed a motion to dismiss the complaint pursuant to sections 2-615 and

2-619 of the Illinois Code of Civil Procedure.  735 ILCS 5/2-615, 2-619 (West 2000).

---

[1]Plaintiff alleged an additional claim under the Magnuson-Moss Warranty Act, 15
U.S.C. § 2301 et seq. (1975).  Plaintiff does not appeal the trial court's ruling with
respect to his Magnuson-Moss claim.  Plaintiff Samuel J. Riolo is not a party to this
appeal.

1-04-2945

Defendant contended: (1) plaintiff failed to allege facts establishing a duty on the part of defendant; (2) plaintiff lacked standing to bring his consumer fraud claim, to represent the class, and to request declaratory relief; (3) plaintiff's claims were barred by the statute of limitations; and (4) plaintiff's consumer fraud claim lacked the requisite specificity for a claim under the Act.

The trial court granted defendant's motion to dismiss. Plaintiff appeals dismissal of the Consumer Fraud Act claims, but not the claims for violation of the Magnuson-Moss Act and for declaratory relief. We affirm the trial court.

FACTS

In his amended complaint, plaintiff alleges, "on information and belief," he purchased his Jeep vehicle from Tyson Motor Corporation in July 1996. He contends the exhaust manifold in his Jeep was substandard and defective and remains so to this day. In paragraph 4 of the complaint, under the heading, "Parties to the Action," he says the "value of WILLIAM L. WHITE's Jeep is diminished by the defective exhaust manifold under its hood, and WILLIAM L. WHITE has been injured by that diminution in value." He says he was unaware of the substandard and defective nature of the exhaust manifold until shortly before his action was filed on November 17, 2003.

Plaintiff contends the "standard in the industry" for vehicles such as Jeeps is to use cast iron exhaust manifolds. From 1991 until early 1999, defendant began using less expensive tubular steel exhaust manifolds instead of the cast iron exhaust manifolds. Plaintiff specifically contends:

"9. ***[e]xhaust manifolds in vehicles such as Jeeps

2

generally do and are expected to last the lifetime of the vehicle, and consumers thus generally do not need to pay for repair or replacement of exhaust manifolds at any time during the life of their vehicles.

* * *

11. As early as 1991, Defendant knew that its cheaper, sub-standard tubular steel exhaust manifolds were prone to cracking and failure. However, rather than disclosing this information to consumers or changing its design, Defendant continued to install the crack-prone tubular steel exhaust manifolds and concealed these facts from the public, thereby reaping excessive profits to the detriment of Plaintiff and the Class both by reducing the cost of goods sold (and thus increasing profits, gaining market share, and earning a higher profit margin on each VEHICLE sold) and by profiting from the sale of replacement exhaust manifolds.

12. The cracks in the VEHICLES' tubular steel exhaust manifolds result from thermal cyclic metal fatigue, whereby the pipes, which are made of tubular steel, are stressed beyond their elasticity as the manifold expands and contracts due to exhaust gas temperature changes during

normal vehicle operation. A properly designed and engineered cast iron exhaust manifold would not fail as aforesaid.

13. *** it usually costs between $800 and $1,600 to replace the cracked tubular steel exhaust manifolds in these VEHICLES, of which approximately $500 is the cost of the replacement part paid to Defendants.

14. Defendant knew as early as 1991 that the tubular steel exhaust manifolds: (a) would not last as long as the conventional cast iron exhaust manifolds; and (b) would fail at unacceptably high rates. Defendant has intentionally concealed these facts from Plaintiff and the Class and continues to do so to this day in order to sell replacement parts and increase profits. Because defendant has omitted and concealed material facts about the exhaust manifolds, members of the public were likely to have been deceived about the quality, performance, and durability of those manifolds.

* * *

34. As a result of Defendant's unlawful act or practice, Plaintiff has been injured in an amount to be proven at trial, and Defendant must be ordered to reimburse this

1-04-2945

> amount to Plaintiff and be further enjoined from continuing to
> refuse to pay for the cost of repair or replacement of cracked
> exhaust manifolds."

Nowhere in the complaint does plaintiff contend the exhaust manifold in his Jeep has failed, nor has he had to pay to repair or replace the exhaust manifold.

The trial court granted defendant's motion to dismiss plaintiff's amended complaint. The record does not contain a transcript of the hearing on the motion to dismiss.

DECISION

Initially, defendant contends plaintiff has waived review of the trial court's dismissal because the court granted its motion to dismiss "in all respects," and plaintiff's brief fails to address each of defendant's bases for dismissal. See 188 Ill. 2d R. 341(e)(7) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.") We disagree. Plaintiff addresses the issues of duty, damages, and the statute of limitations and discusses the general pleading requirements under the Act. Plaintiff's discussion of damages addresses the gist of defendant's standing arguments.

Given the absence of a hearing transcript, we cannot be certain which factors the trial court considered when it dismissed plaintiff's complaint. The court apparently agreed with all of the defendant's contentions since it granted the motion to dismiss "in all respects." We do not find plaintiff waived review of any of the issues addressed by the defendant in its motion. That said, we may affirm the trial court's order on any basis

5

appearing in the record.  Cronin v. McCarthy, 264 Ill. App. 3d 514, 529, 637 N.E.2d 668 (1994).

A section 2-615 motion to dismiss admits all well-pleaded facts and attacks the legal sufficiency of the complaint; a motion to dismiss under section 2-619 admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matter that act to defeat the plaintiff's claim.  Neppl v. Murphy, 316 Ill. App. 3d 581, 584, 736 N.E.2d 1174 (2000).  In reviewing a section 2-615 motion, we take as true all well-pleaded facts in the complaint and any reasonable inferences that may be drawn from it.  Ziemba v. Mierzwa, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365 (1991).  However, we will disregard mere conclusions of law or fact not supported by specific factual allegations.  Doe v. Calumet City, 161 Ill. 2d 374, 385, 641 N.E.2d 498 (1994).  Our review of the trial court's dismissal under either section 2-615 or 2-619 is de novo.  Neppl, 316 Ill. App. 3d at 583.

I. Consumer Fraud Act Requirements

The Act declares unlawful:

"[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice

described in section 2 of the 'Uniform Deceptive Trade

Practices Act,' approved August 5, 1965, in the conduct of

any trade or commerce *** whether any person has in fact

been misled, deceived or damaged thereby.  In construing

this section consideration shall be given to the

interpretations of the Federal Trade Commission and the

federal courts relating to Section 5(a) of the Federal Trade

Commission Act."  815 ILCS 505/2 (West 2000).

To state a claim under the Act, a complaint must set forth specific facts showing: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 501, 675 N.E.2d 584 (1996).  To bring a civil suit for damages, the Act requires that the plaintiff suffer "actual damages."  815 ILCS 505/10a(a) (West 2000).  Plaintiff's reliance is not an element of statutory consumer fraud.  Connick, 174 Ill. 2d at 501.

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud.  Pappas v. Pella Corp., 363 Ill. App. 3d 795, 799, 844 N.E.2d 995 (2006), citing Connick, 174 Ill. 2d at 504.  A complaint alleging a consumer fraud violation must be pled with the same particularity and specificity as that required under common law fraud.  Connick, 174 Ill. 2d at 501.

Neither party disputes that the sale of plaintiff's Jeep took place in the conduct of

trade or commerce. In determining whether plaintiff's complaint states a claim for an omission of a material fact, it is helpful to review similar cases where the courts held the complaints adequately pled a consumer fraud violation.

In Connick, the plaintiffs alleged the Suzuki Samurai vehicles they purchased were unsafe due to their excessive rollover risk. Connick, 363 Ill. App. 3d at 487-88. Plaintiffs contended Suzuki fraudulently concealed material facts by failing to inform consumers of the Samurai's rollover tendency, then selling the Samurai without disclosing the safety risks. Connick, 174 Ill. 2d at 504. Plaintiffs did not allege they had ever suffered a rollover accident in a Samurai. Rather, they sought compensation for the diminution in the vehicles' resale value due to the perceived safety risk. Connick, 174 Ill. 2d at 489. Plaintiffs' complaint alleged Suzuki received notice of the Samurai's safety problems through information received from newspapers, magazines, and various third parties. Connick, 174 Ill. 2d at 494.

The court held plaintiffs adequately pled a consumer fraud violation based on a material omission by Suzuki:

"Plaintiffs alleged that Suzuki was aware of the Samurai's

safety problems, including its tendency to roll over and its

inadequate protection for passengers. Plaintiffs further

alleged that Suzuki failed to disclose these defects. Finally,

plaintiffs alleged that the safety problems of the Samurai

were a material fact in that they would not have purchased

the vehicles if Suzuki had disclosed the Samurai's safety

10

risk." Connick, 174 Ill. 2d at 505.

In Perona v. Volkswagen of America, Inc., 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997), the plaintiffs alleged defendants knowingly concealed defects in their Audi vehicles that caused "unintended acceleration." As a result of the defects, plaintiffs claimed their vehicles had lost their resale value. Plaintiffs claimed damages in the amount of the full cost of their vehicles, or, should defendants remedy the problem, in the amount of the diminution of the resale value. Perona, 292 Ill. App. 3d at 62-63.

The court held plaintiffs adequately alleged a consumer fraud violation based on a material omission by Audi. Perona, 292 Ill. App. 3d at 68. First, plaintiffs alleged Audi was aware of the Audi 5000's safety problems. Attached to the complaint were two press releases by Audi acknowledging the existence of excessive unintended accelerations of the Audi 5000. Perona, 292 Ill. App. 3d at 68. Second, plaintiffs alleged Audi failed to disclose these defects. Perona, 292 Ill. App. 3d at 69. Finally, plaintiffs alleged the unintended acceleration was a material fact in that they would not have purchased their vehicles if Audi had previously disclosed the safety risk. Perona, 292 Ill. App. 3d at 69.

In Lipinski v. Martin J. Kelley Oldsmobile, Inc., 325 Ill. App. 3d 1139, 1143, 759 N.E.2d 66 (2001), the plaintiff alleged his car was defective because it had an excess risk of oil migration into the PVC system, resulting in excessive oil consumption and severe damage to the engine from insufficient oil. Plaintiff alleged the engine in his car failed as a result of the defect. Plaintiff alleged defendants knew of the car's "tendency for excessive oil consumption" no later than January 30, 1997, when GM issued a

technical bulletin to its dealers, yet they failed to disclose the defect. Lipinski, 325 Ill. App. 3d at 1143. The defendants knew of the defect when they sold the car to the plaintiff in April 1997. Plaintiff said he would not have purchased the car had he known of the tendency. He alleged he suffered damages for the cost of replacing the engine and for the diminution in the value of the car. Lipinski, 325 Ill. App. 3d at 1143. The court held the allegations were sufficient to state a claim under the Act. Lipinski, 325 Ill. App. 3d at 1145. In light of the above cases, we now examine the allegations in plaintiff's complaint to determine whether they meet the Act's requirements for a concealment or omission claim.

A. Knowledge/Duty

Defendant contends plaintiff's claim fails because the facts pleaded were legally insufficient to support the existence of any duty on the part of defendant. Defendant says plaintiff's complaint would impose a duty on manufacturers to use only "indestructible" parts, or to identify to consumers any part that might fail, even if the failure would not occur for many years. See Weiss v. Rockwell Manufacturing Co., 9 Ill. App. 3d 906, 918, 293 N.E.2d 375 (1973) (in warranty case, manufacturer is under no obligation to furnish a machine that does not wear out); Abraham v. Volkswagen of America, 795 F.2d 238, 250 (2d Cir. 1986) (a rule making failure of a part actionable based on manufacturer's knowledge of the effective life of the part would render meaningless time/mileage limitations in warranty coverage).

Defendant misapprehends the allegations in plaintiff's complaint and reads into the Act a duty requirement that does not exist. Plaintiff does not contend defendant was

12

obligated to manufacture a machine that does not wear out or to disclose the effective life of every part in the vehicle. Rather, he contends defendant installed defective exhaust manifolds in Jeep vehicles from 1991 until 1999, knew the parts were defective, and failed to disclose the existence of the defective parts. See Pappas, 363 Ill. App. 3d at 801 (plaintiffs contended a specific defect in the windows caused them to leak and deteriorate); Cf. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 192-95, 835 N.E.2d 801 (2005) (plaintiffs alleged defendant failed to disclose categorical inferiority of non-OEM parts; plaintiffs did not allege parts were defective, an omission that led to the defeat of their claim).

Moreover, the Act does not require a plaintiff to plead the existence of a common law duty. "[I]t is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." Connick, 174 Ill. 2d at 505. The Act indicates, however, that sellers have a duty not to conceal or suppress known material facts regarding products from potential buyers. Miller v. William Chevrolet/Geo, Inc., 326 Ill. App. 3d 642, 658, 762 N.E.2d 1 (2001); Totz v. Continental Du Page Acura, 236 Ill. App. 3d 891, 902, 602 N.E.2d 1374 (1992).

> "Under this interpretation, plaintiffs must establish that the
> fact concealed was known to the seller at the time of
> concealment. Unlike an action for misrepresentation under
> the Act, where even innocent misrepresentations can
> support liability, an action for fraudulent concealment
> logically demands that defendants have prior knowledge of

13

the information that they are alleged to have suppressed."

Miller, 326 Ill. App. 3d at 658.

Plaintiff pleads that, "as early as 1991," defendant knew the tubular steel exhaust manifolds would not last as long as the conventional cast iron manifolds, and would fail at "unacceptably high rates." Unlike the plaintiffs in Connick, Perona, and Lipinski, plaintiff does not specify how defendant knew this information. For purposes of the Act, it is important that the defendant be aware of the existence of the material fact before the time of the sale to the plaintiff. Otherwise, an omission of a material fact cannot be the proximate cause of the plaintiff's damages. See Perona, 292 Ill. App. 3d at 69.

Nor does plaintiff specifically allege the defendant intended for the plaintiff to rely on its concealment or omission, a requirement for a consumer fraud claim. See Miller, 326 Ill. App. 3d at 658. However, circumstantial evidence may be used to establish the seller's intent. Totz, 236 Ill. App. 3d at 903. We may infer from plaintiff's allegation that the defendant "intentionally concealed these facts from Plaintiff and the Class and continues to do so to this day in order to sell replacement parts and increase profits" that defendant intended for plaintiff to rely on its concealment.

B. Material Fact

Neither "defect" nor "unreasonably dangerous" are necessary elements of a Consumer Fraud Act claim. Pappas, 363 Ill. App. 3d at 802. For a claim based on an omission, plaintiffs are required only to allege an omission of a "material fact" in the course of trade or commerce. Pappas, 363 Ill. App. 3d at 802.

"A material fact exists where a buyer would have acted

14

> differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." Connick, 174 Ill. 2d at 505.

In his briefs, plaintiff contends the material fact that defendant failed to disclose is the fact that the exhaust manifolds had an "exceptionally high failure rate." He says, "it is the failure rate, rather than either the component material of the exhaust manifold or the design change, that is material to the transaction." According to the complaint, this fact is material to consumers because the "cracking and failure of the tubular steel exhaust manifolds would cost consumers hundreds and sometimes thousands of dollars apiece."

Nowhere in the complaint does plaintiff say he would have acted differently if he had possessed the information before the sale, nor does he say how or why consumers would be expected to rely on that information before making a purchase. See Butitta v. First Mortgage Corp., 218 Ill. App. 3d 12, 19, 578 N.E.2d 116 (1991) (the absence of an allegation of how one would have acted differently may suggest a lack of materiality).

More importantly, we believe the allegations in the complaint describing the alleged defect fall short of the specificity required by the Act. Plaintiff alleges defendant knew the tubular steel exhaust manifolds were "prone to cracking and failure," "would fail at unacceptably high rates," and that defendant was aware of a "high frequency of failures." Plaintiff does not define these general phrases or provide more detail about the number of failures that occurred, how the defendant knew about the failures, or what

defendant knew at the time of the sale to plaintiff. The complaint is laden with conclusion and conjecture.

Although, at least in a common law fraud case, the materiality of a misrepresentation is a question of fact to be determined by the trier of fact, Thompson v. IFA, Inc., 181 Ill. App. 3d 293, 299, 536 N.E.2d 969 (1989), plaintiff still must allege with sufficient particularity the facts that make the defendant's omission or concealment material. He has not done that.

C. Damages

In paragraph 4 of his complaint, plaintiff pleads the value of his Jeep is diminished by the defective exhaust manifold under its hood, and he has been injured by the diminution in value. The Act provides remedies for omissions resulting in purely economic injury. Pappas, 363 Ill. App. 3d at 802-803. But plaintiff fails to specify how the value of his vehicle has been diminished. Plaintiff never says the alleged defect has had any impact on his Jeep's "resale value." He never says he would have done anything differently, like bargain for a lower price or refuse to buy the vehicle, if he had known about exhaust manifold failures. Plaintiff has never paid for a repair to the exhaust manifold in his vehicle and has not sold the vehicle at some diminished value. We note that in Connick, Perona, and Lipinski the courts observed plaintiffs had alleged they would not have bought the vehicle had they known of the defect. Because of his failure to be specific about the diminution of value, we do not believe he has adequately pled actual damages.

True, diminution in resale value has been held to be a legally cognizable injury

16

under the Act, even where the plaintiff's product has not yet failed.  See Miller, 326 Ill. App. 3d at 653; Connick, 174 Ill. 2d at 489; Perona, 292 Ill. App. 3d at 62-63; Dewan v. Ford Motor Co., 363 Ill. App. 3d 365, 369, 842 N.E.2d 756 (2005); Schiffner v. Motorola, Inc., 297 Ill. App. 3d 1099, 1108-09, 697 N.E.2d 868 (1998).

Failure to allege actual damages proximately caused by the alleged defect has proved fatal for plaintiffs' complaints in other cases.  See Avery, 216 Ill. 2d at 196-97 (no showing of actual damage in a consumer fraud claim where plaintiff's testimony established he sold the car for its fair market value despite the presence of non-OEM parts); Valenti v. Mitsubishi Motor Sales of America, Inc., 332 Ill. App. 3d 969, 773 N.E.2d 1199 (2002) (plaintiff failed to meet burden of showing present injury for breach of warranty claim where evidence showed he sold the car for fair market value); Kelly v. Sears Roebuck & Co., 308 Ill. App. 3d 633, 644, 720 N.E.2d 683 (1999) (plaintiff alleged defendant had a practice of selling used batteries, but did not allege he actually received one of the used batteries).

This complaint falls short of alleging actual damages.

CONCLUSION

For the reasons we have set out, we find the trial court's dismissal of plaintiff's complaint was appropriate.  Our agreement with the trial court obviates any reason to discuss other issues that might have been raised in this appeal, such as standing to represent the class, the right to declaratory relief, and applicability of the statute of limitations.  We affirm the trial court's dismissal of plaintiff's complaint.

Affirmed.

1-04-2945

HOFFMAN, and SOUTH, JJ., concur.